**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 1:21-cr-523-TNM** |
| **ELIAS ELDABBAGH,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MOTION FOR REVOCATION HEARING

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court, pursuant to 18 U.S.C. § 3148(b), to initiate a proceeding for revocation of Defendant Elias Eldabbagh's release. Section 3148(b) provides that government counsel "may initiate a proceeding for revocation of an order of release by filing a motion with the district court."

## I.    BACKGROUND

### A.  Procedural Background

On August 17, 2021, a grand jury in the District of Columbia returned an indictment charging Defendant, Elias Eldabbagh, with wire fraud in violation of 18 U.S.C. § 1343, engaging in monetary transactions in criminally derived funds (commonly known as "expenditure money laundering") in violation of 18 U.S.C. § 1957, aggravated identity theft in violation of 18 U.S.C. § 1028A, and destruction or removal of property to prevent seizure in violation of 18 U.S.C. § 2232(a). The charges arose from a complex scheme utilizing stolen identities and stolen financial documents used to attempt to steal more than $25 million in Paycheck Protection Program ("PPP") loans and Economic Injury Disaster Loan ("EIDL") funds, resulting in the successful theft of $2,385,000.

On August 20, 2021, the Defendant was arrested in D.C. He made his appearance on that day before Magistrate Judge Faruqui. At his initial appearance, the government stated that while there was a basis to move to detain the Defendant, the government did not object to release to home incarceration with a strict constellation of conditions of pretrial release designed to address the risk of further frauds. Accordingly, the Defendant was released to home incarceration and GPS monitoring with a multitude of additional conditions including (1) do not violate federal, state, or local law (2) no access to the internet except to communicate with defense counsel; (3) no access to financial accounts except for one checking account under supervision of pretrial; (4) must submit monthly records of all bank accounts accessed or used to pretrial services; (5) take no action with respect to financial accounts seized pursuant to seizure order; and (6) make no request for funds from financial institutions except by permission of pretrial services. *See* ECF 8 (Conditions of Release).

### B.  The Indictment

As alleged in the indictment, between July 2020 and July 2021, the Defendant filed numerous false applications for PPP loans and EIDL funds, through the use of stolen identities and stolen financial documents. *See* ECF 1. At the time of indictment, investigators had identified more than $17 million in fraudulent PPP loan and EIDL applications filed by the Defendant. As of the filing of this motion, investigators have identified $25 million in fraudulent applications. Through this scheme, the Defendant successfully stole $2,385,000 in PPP loan funds and EIDL funds. Each application was made in the name of the Defendant's company, Alias Systems, LLC, and was supported by financial records – including tax returns and payroll reports – stolen from a legitimate

consulting firm and doctored by the Defendant to appear to be tax records and payroll reports of his company, Alias Systems, LLC. Count One through Five of the Indictment charge the Defendant with wire fraud for five of the electronic PPP loan applications that originated from the District of Columbia and constitute interstate wires. These applications were filed from an IP Address registered to the Defendant in the District of Columbia.

The fraud proceeds were deposited into an account in the name of Alias Systems, LLC, over which the Defendant had sole signatory authority. The Defendant then began the process of executing a truly dizzying array of transactions, ultimately transferring the stolen funds into dozens of bank accounts, also held solely in his name, and using them to make investments, purchase crypto-currency, and purchase a brand-new Tesla.

Counts Six through Nineteen of the Indictment charge the Defendant with multiple counts of 18 U.S.C. § 1957 related to these transactions. In May 2021, IRS-CI executed seizure warrants on said Tesla and seized 19 bank accounts containing proceeds of the fraud scheme. Counts Twenty through Thirty-Three of the Indictment charge the Defendant with aggravated identity theft for his use of stolen identities in the fraudulent PPP loan applications charged in Counts One through Five.

Finally, the Defendant is charged in Count Thirty-Four with Destruction or Removal of Property to Prevent Seizure based on the Defendant's efforts in May 2021 through July 2021 to transfer funds held in E*Trade and Webull accounts previously seized by IRS-CI. These efforts included attempts to transfer the seized funds and attempts to add a second owner, in order to allow that person to fraudulently transfer the funds. Indeed, the Defendant was successful in transferring seized funds out of his Webull account, although IRS-CI uncovered his plot and recouped the funds through Webull.

### C.  Actions in Violation of Conditions of Release

Notwithstanding a pending charge for Removal of Property to Prevent Seizure and this Court's order setting pretrial conditions of release which prohibits the Defendant from taking action with respect to seized accounts and which prohibits any request for funds from financial institutions, the government has recently learned that on September 15, 2021, after his release on these strict conditions of release, the Defendant contacted CitiBank, fraudulently claiming that he did not deposit CitiBank Check # 991536681 in the amount of $230,024.22 ("the check")  to one of the Defendant's seized accounts at E*Trade, and requesting that CitiBank reissue the check in an effort to circumvent the seizure. Said differently, less than a month after his arraignment on a $25 million PPP loan fraud scheme, the Defendant attempted to defraud CitiBank out of more than $230,000, and in so doing violated multiple conditions of release.

On or about September 15, 2021 the Defendant signed and submitted a sworn and notarized Affidavit of Forgery, Alteration, Counterfeit or Unauthorized Remotely Created Check ("the affidavit") to CitiBank. *See* Exhibit 1. This affidavit fraudulently claims the endorsement on the $230,000 check was a forgery and the Defendant did not write or authorize the endorsement, hence did not authorize the deposit into the Defendant's account at E*Trade.[1] While the affidavit was signed, sworn and notarized on September 15, 2021, it claims the Defendant discovered the forgery on May 1, 2021 when he requested a check for the balance of his closed CitiBank account ending in x2045. CitiBank's Fraud Prevention Unit submitted a copy of the affidavit and the check to E*Trade and requested reimbursement in the amount of $230,024.22. E*Trade recognized the ploy as fraud and

---

[1] *See also* Exhibit 2, a blank version of the Citibank Affidavit of Forgery, Alteration, Counterfeit or Unauthorized Remotely Created Check.

denied the request.

On January 19, 2022, special agents from IRS-CI interviewed the notary who notarized the Affidavit. The notary retained records of the transaction and confirmed that she notarized the Defendant's signature on September 15, 2021 at the Defendant's home address of 642 Columbia Rd. NW, Washington, D.C. The notary also confirmed the Defendant's identity when shown a picture of the defendant. *See* Exhibit 3 (Memorandum of Interview of Notary).

The diagram below demonstrates the tracing of fraudulent PPP loan proceeds through the Defendant's US Bank Account in the name of Alias Systems and to his CitiBank account ending in x2045 and finally to the Defendant's E*Trade account ending in x1226 by way of the check:



On or about April 6, 2021 the Defendant's CitiBank Account x2045 was closed while it had a balance of remaining funds in the amount of $230,024.22. *See* Exhibit 4 (Citibank Statement for Account x2045). CitiBank issued the Defendant the check from a CitiBank corporate account for the remaining balance of the account. On or about April 15, 2021,[2] the check was deposited into the Defendants E*Trade brokerage account x1226. *See* Exhibit 5 (E*Trade Statement for Account x1226).

*The Defendant's Affidavit is False*

The Defendant's affidavit to Citibank, Exhibit 1, is patently false. First, the supposedly forged check was deposited into E*Trade account x1226, which is held solely in the Defendant's name. In other words, the deposit went into his own account. Accordingly, Statement 1 on the affidavit, "I did not receive any benefit or value from proceeds of the check/withdrawal order, and proceeds were not used for any purpose on my behalf[,]" is false.

Second, the signature on the allegedly forged check is clearly that of Elias Eldabbagh. A comparison of a known signature exemplar of Eldabbagh matches the supposedly forged signature on the check:

---

[2] According to E*Trade records, the deposit was made on April 14, 2021, *see* Exhibit 6, and according to Citibank records, the funds were paid out on April 15, 2021, *see* Exhibit 1.



*Signature on check that Elias Eldabbagh claimed was forged (Exhibit 1 p. 3)*



*Signature of Elias Eldabbagh from Eldabbagh's employment contract (Exhibit 7)*

Accordingly, the Defendant's statement on the affidavit that the "endorsement of Elias Eldabbagh on the above check is a forgery. I did not write or authorize the endorsement[,]" is false.

Third, a photograph of the supposedly forged check was seized from the Defendant's phone and the date of the photograph, April 14, 2020, is the same date of deposit into the E*Trade account. *See* Exhibit 6 (Forensic report of check image seized from Eldabbagh's phone). In other words, the Defendant took a photograph of the subject check on the exact same day of its deposit, belying his claim that it was forged by another person.

<u>*The False Affidavit Pertains to a Seized Account*</u>

In May 2021, the government obtained seizure warrants of approximately 19 bank accounts containing fraudulent proceeds of this scheme and a seizure warrant for a Tesla purchased by Eldabbagh with fraud proceeds.[3] Those seizure warrants were provided to

---

[3] *See* 21-sz-3 (seizure warrant for Tesla); 21-sz-4 (seizure warrant for US Bank); 21-sz-5 (seizure warrant for E*Trade); 21-sz-6 (seizure warrant for Morgan Stanley); 21-sz-7 (seizure warrant for SoFi); 21-sz-8 (seizure warrant for WeBull); 21-sz-8 (seizure warrant

the Defendant during a simultaneous execution of a search warrant of his residence. The seizure warrant for Citibank included only Citibank account x7483 because account x2045 had already been closed and its contents transferred in their entirety to E*Trade account x1226. It would appear, based on the facts above, that the Defendant identified the Citibank account x2045 as an account for which there was *not* a seizure warrant and surmised – correctly – that account x2045 was not frozen, and that he might be able to fraudulently convince Citibank to reverse the $230,024.22 transaction that transferred fraud proceeds out of Citibank account x2045 to the seized and frozen E*Trade account x1226.

The attempt to obtain $230,024.22 from E*Trade account x1226 through this fraud scheme clearly constitutes an action pertaining to seized E*Trade account x1226.

## II.    APPLICABLE LAW

A defendant "who has violated a condition of release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court."   18 U.S.C. § 3148(a).  D.C. Circuit precedent permits the Government to proceed by way of proffer at a detention hearing.  *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996); *see also United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) ("proffers are permissible both in the bail determination and bail revocation contexts.").

Section 3148(b) directs a judicial officer to revoke a defendant's release and order detention if,

after a hearing, the judicial officer –

(1) finds that there is -

(A) probable  cause  to  believe  that  the  person  has  committed  a

---

for Robinhood); 21-sz-10 (seizure warrant for CitiBank); 21-sz-11 (seizure warrant for Primetrust); 21-sz-12 (follow-on seizure warrant for SoFi).

Federal, State, or local crime while on release; or

(B) clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that –

(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

## III.   DISCUSSION

### A.  There is clear and convincing evidence that the defendant violated his conditions of release.

In this Court's Order Setting Conditions of Release, which the Defendant acknowledged on the record, the Defendant was ordered, among many other conditions:

- "The defendant must not violate federal, state, or local law while on release."[4]

- "No access to internet including smart phones, computers, tables, or smart TVs, [e]xcept to communicate with defense counsel and review discovery."

- "No access to financial accounts except for one checking account under supervision of pretrial. Defendant is to restrict financial transactions to one account and to submit monthly records of all bank accounts access or used to pretrial services."

- "Take no action with respect to financial accounts that have been seized pursuant to seizure order."

---

[4] There is probable cause that the Defendant has violated federal law as his attempt to steal $230,024.22 from Citibank constitutes bank fraud in violation of 18 U.S.C. § 1344 as required for revocation pursuant to 18 U.S.C. § 3148(b)(1)(A). However, the Court need not reach whether the government has shown a violation of federal law by probable cause because of the clear and convincing evidence that the Defendant violated multiple other conditions of release.

- "No… request for funds from … financial institutions except by permission of pretrial services."

*See* ECF 8 at 1-2.

This constellation of conditions was devised to prevent precisely this – yet another attempt by the Defendant to fraudulently obtain money to which he is not entitled. The Defendant's efforts to defraud Citibank constitute a clear violation of the condition that he take no action with respect to seized financial accounts, as the attempted transfer affected seized E*Trade account x1226 and it is a clear violation of the order that that he make no request for funds from a financial institution.

The attached exhibits establish clear and convincing evidence that the Defendant violated this Court's release order on multiple occasions by taking action with respect to a seized financial account and attempting to obtain funds from a financial institution without permission of the pretrial services officer. These actions constitute a flagrant violation of the Defendant's conditions of release and demonstrate that this Defendant is an intractable fraudster and is simply unable to comply with this Court's conditions of release.

The government also notes that the Defendant has been clearly evading the requirement that he confine financial transactions to one account and submit monthly reporting of that account to the Pretrial Services Agency. The Pretrial Service Agency officer informed the United States Attorney that the Defendant has been providing bank statements with no transactions and claiming that his live-in boyfriend pays all expenses. According to information gathered during the investigation, the Defendant's live-in boyfriend did not manage the Defendant's finances prior to his arrest, and previously told law enforcement that he is unemployed, thus unlikely able to afford Defendant's living

expenses which include a $4,500.00 monthly rent payment.   Accordingly, notwithstanding the strict financial conditions of release, pretrial services has received no information regarding how the Defendant pays his living expenses.

The Pretrial Services Agency for the District of Columbia was informed of the Defendant's fraudulent Citibank affidavit on January 24, 2022 and informed the government that it agrees, based on the documents attached hereto, that the Defendant's conditions of release have been violated.

### B.  The factors in section 3142 support the defendant's detention under section 3142(b)(2).

The four factors that the Court must consider under section 3142(g) are (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the Defendant, including his criminal history, and (4) the nature and seriousness of the danger to any person or the community posed by the Defendant's release. 18 U.S.C. § 3142(g). The Section 3142(g) factors all warrant the Defendant's detention under 18 U.S.C. § 3148(b)(2)(B).

### i.  The Nature and Circumstances of the Offense

The nature and circumstances of Defendant's conduct are serious. The Defendant has attempted to steal more than $25 million in PPP loan and EIDL funds through a complex scheme involving multiple stolen identities and stolen sensitive financial data. He has caused an actual loss of $2,385,000. Further, the Defendant took multiple steps to attempt to thwart IRS-CI's seizure of the stolen funds. Accordingly, he has been charged with five counts of wire fraud, 14 counts of expenditure money laundering, 14 counts of aggravated identity theft, and one count of removal of property to prevent seizure. *See* ECF 1. The investigation is continuing, and it is possible – indeed, likely – that the investigators

will uncover additional fraudulent applications by this Defendant.

Each of these offenses are serious. Wire fraud carries a 20-year statutory maximum, expenditure money laundering carries a 10-year statutory maximum, aggravated identity theft carries a mandatory consecutive 2-year sentence, and removal of property to prevent seizure carries a 5-year statutory maximum. The government calculates that the Defendant's U.S. Sentencing Guidelines Range, based on an intended loss of more than $25 million is 36, and factoring in his estimated Criminal History Category of III, the resulting advisory range is 235-293 months' imprisonment before application of the mandatory consecutive two-year sentence for aggravated identity theft,[5] which functionally shifts the advisory Guidelines range to 259 to 317 months' imprisonment.

### ii.        Weight of the Evidence

The evidence in this case is unusually strong. The Defendant filed the fraudulent PPP loan applications in the name of his own entity, Alias Systems, LLC, and from IP addresses that were registered in his own name and at his own residence. The Defendant supported his fraudulent applications with doctored PDFs that showed, in the metadata, that he was the author and at times clearly showed the changes that he had made to the documents. The Defendant had complete control over the fraudulent proceeds. They were first deposited into a bank account over which the Defendant had sole signatory authority and were then transferred to additional bank accounts which, also, were held solely in the Defendant's name. In other words, the Defendant directly received the fraudulent proceeds and always kept custody and control of the fraudulent proceeds. The Defendant made repeated communications with these various financial institutions, identifying himself by

---

[5] This calculation assumes that each aggravated identity theft sentence will be imposed concurrently.

name on phone calls, and inquiring after incoming fraudulent deposits. The unredacted stolen tax returns from Company 1 as well as photographs of C.S.'s identification card, used to implement the scheme were found on the Defendant's personal cell phone. Multiple credits cards of the identity theft victim, C.S., were also seized from the Defendant's residence during execution of a search warrant.

### iii.        History and Characteristics of the Defendant

The Defendant has a significant history of arrest and conviction for drug-related and fraud-related offenses. Further, the Defendant committed the instant offense while on probation for one offense and on pre-trial release for another. The following is based on the undersigned's review of National Crime Information Center (NCIC) and publicly available state dockets:[6]

- On October 9, 2015, the Defendant was charged with possession, not marijuana, possession of marijuana and possession of paraphernalia in Queen Anne's County, Maryland (0M00025753). On December 18, 2015, the charges were placed on the "stet" docket.

- On September 14, 2018, the Defendant was charged with theft under $1,500 in Montgomery County, Maryland (3D00386487). The Defendant pleaded guilty on November 1, 2018 and was sentenced to 6 months, suspended and one year of probation.

- On August 14, 2018, the Defendant was charged with petit larceny and obtaining money under false pretenses in Arlington, Virginia (GC18167831-00, GC18167834-00). He was found guilty in absentia on December 27, 2018.

- On September 2, 2018, the Defendant was charged with misdemeanor assault in Arlington, Virginia (GC18003574-00). The case was nolle prosequied.

- On October 23, 2018, the Defendant was charged with petit larceny

---

[6] Please note that information available on publicly available state dockets is not always completely consistent with information contained in NCIC reports and this information has not been confirmed by the Pretrial Services Agency.

(shoplifting) in Arlington, Virginia (GC18004186-00). He was found guilty on January 31, 2019. The Defendant appealed.

- On February 12, 2019, the Defendant was charged with misdemeanor petit larceny in Arlington, Virginia (CR19000129-00). The charge was amended to misdemeanor entering property to cause damage. The Defendant pleaded guilty on April 23, 2019 and sentenced to 180 days, suspended and 12 months' probation.

- On February 19, 2019, the Defendant was charged with felony possession of a controlled substance in Arlington, Virginia (GC19000676-00). The case was nolle prosequied on November 22, 2019.

- On February 19, 2019, the Defendant was charged with misdemeanor possession of marijuana (GC19000677-00). He was found guilty on November 22, 2019 and was sentenced to 180 days, suspended.

- On March 12, 2019, the Defendant was charged with Grand Larceny in Arlington, Virginia (GC19053972-00). The charge was amended to misdemeanor trespass and the Defendant pleaded nolo contendere on July 24, 2019. He was sentenced to 12 months, suspended. Accordingly, when the defendant filed a fraudulent PPP application on July 4, 2020 to Cross River Bank, he was still serving his suspended sentence in Arlington, Virginia.

- On March 18, 2019, the Defendant was charged with shoplifting in Arlington, Virginia (GC19001077-00). He was found not guilty on April 19, 2019.

- On March 28, 2020, the Defendant was charged with the felony offense of Possession of a Schedule I/II Controlled Substance in Arlington, Virginia (GC20001422-00). That case was nolle prosquied in May 2021. However, the Defendant was on pre-trial release during the pendency of that case while he committed the majority of the crimes charged in the instant indictment.

- On September 11, 2020, the Defendant was charged with misdemeanor violation of probation (CR19000129-02). This was dismissed on August 6, 2021.

### iv. Nature and Seriousness of the Danger to any Person or the Community

The Defendant's potential release poses an economic danger to the community, which also is a basis for detention. The legislative history of the Bail Reform Act of 1984

makes clear that Congress intended that the "safety of any other person or the community" language in 18 U.S.C. § 3142 was expected to be given a broad construction.  *See* S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the Defendant might engage in criminal activity to the detriment of the community. *The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.*") (emphasis added).

Courts have appropriately construed the statute to find that protection of the community from economic harm is a valid objective of bail conditions. *See, e.g., United States v. Madoff*, 586 F. Supp. 2d 240, 252 (S.D.N.Y. 2009) (noting support for considering economic harm in evaluating danger to the community under § 3142 or the Bail Reform Act); *United States v. Schenberger,* 498 F. Supp. 2d 738, 742 (D.N.J. 2007) (holding that "[a] danger to the community does not only include physical harm or violent behavior" and citing the Senate Committee Report language reproduced above); *United States v. LeClercq,* No. 07-80050-cr, 2007 WL 4365601, at *4 (S.D. Fla. Dec. 13, 2007) (finding that a large bond was necessary to, among other things, "protect the community from additional economic harm"); *United States v. Persaud,* No. 05 Cr. 368, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) (concurring with the Magistrate Judge that "economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); *United States v. Gentry,* 455 F. Supp. 2d 1018, 1032 (D. Ariz. 2006) (in a fraud and money laundering case, in determining whether pretrial detention was appropriate, the court held that danger to the

community under Section 3142(g) "may be assessed in terms other than the use of force or violence . . . [including] economic danger to the community"); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) ("There can be no question that an economic danger . . . falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act.").

This Defendant has filed dozens of fraudulent applications with lenders and government agencies seeking funds to which he is not entitled. After seizure of his fraudulent proceeds, he continued to attempt to unlawfully regain custody of his fraud proceeds. Even after indictment for a $17 million fraud, this Defendant continued to attempt to defraud a financial institution in direct violation of his conditions of release. The Defendant poses a serious and immediate economic danger to the community, which is well exemplified by his efforts to defraud Citibank out of $230,000 while on pre-trial release in this case.

> ### C.  The Defendant has demonstrated that he is unlikely to abide by any condition of combination of conditions of release.

The possibility of economic danger to the community if the Defendant remains on release is persuasively established by the Defendant's own attempts to defraud Citibank while on release for the instant case. The Defendant has demonstrated abject disregard for this Court's conditions of release and it is evident that he will be unable to abide by the Court's conditions of release.

## CONCLUSION

For the reasons stated above, the Court should revoke the Defendant's release pursuant to Sections 3148(b)(1)(B) and 3148(b)(2)(B) because there is clear and convincing evidence that the Defendant has violated multiple conditions of release and the

Defendant is unlikely to abide by any condition or combination of conditions of release.

The Defendant should be remanded to the custody of the United States Marshals Service

pending trial in this matter.

                                     Respectfully submitted,

                                     MATTHEW M. GRAVES
                                     United States Attorney
                                     D.C. Bar No. 481052

By: ____/s/_____
                                     LESLIE A. GOEMAAT
                                     MA Bar No. 676695
                                     Assistant United States Attorney
                                     Fraud Section
                                     U.S. Attorney's Office
                                     555 4th Street, N.W., Room 5840
                                     Washington, D.C.  20530
                                     Office: 202-803-1608
                                     Leslie.Goemaat@usdoj.gov

17