**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** 1:21-cr-00523-TNM |
| | ) | |
| **ELIAS ELDABBAGH,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | **Redacted** |

---

<u>**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................................ii

INTRODUCTION ......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 2

█ ███████████████████████████████████████████████

█ ███████████████████████████████████████████████

█ ███████████████████████████████████████████████

█ ███████████████████████████████████████████████

█ ███████████████████████████████████████████████

███████████████████████████████████████████████

SENTENCING ARGUMENT ........................................................................................................ 17

I.      APPLICABLE LAW. .......................................................................................................... 17

II.     THE SENTENCING GUIDELINES SHOULD NOT DETERMINE ELIAS'S
SENTENCE. .................................................................................................................................. 18

    A.    The Sentencing Guidelines Calculation. .................................................................. 18

    B.    The Fraud Guideline is not Empirically-Based and Results in an Excessive Advisory
Range. ............................................................................................................................................ 19

    C.    The Advisory Guidelines Vary Widely Based on Factors Uniquely Within the
Government's Control. .................................................................................................................. 22

III.    THE SECTION 3553(a) FACTORS WARRANT A SENTENCE SIGNIFICANTLY
BELOW THE ADVISORY GUIDELINES. ................................................................................. 28

    A.    Elias Eldabbagh's History and Characteristics Warrant a Significant Downward
Variance. ........................................................................................................................................ 28

    B.    A Below-Guidelines Sentence is Necessary to Avoid Sentencing Disparities and to
Promote Respect for the Law. ...................................................................................................... 31

    C.    Rehabilitation, Rather than a Long Period of Incarceration, Will Most Effectively
Achieve Specific Deterrence. ....................................................................................................... 38

    D.    The Need for Just Punishment Does Not Justify a Sentence in the Advisory
Guidelines Range........................................................................................................................... 41

    E.    A Split Sentence Followed by Supervised Release Will Best Serve All of the Goals of
Sentencing. .................................................................................................................................... 43

    F.    Credit for Time Served. ............................................................................................. 44

    G.    Restitution, Forfeiture Payment and Interest Schedule. ........................................... 45

CONCLUSION.............................................................................................................................. 45

Elias M. Eldabbagh, through counsel, respectfully submits his Sentencing Memorandum. For reasons that will be addressed below, this Court should impose a sentence of 42 months incarceration in the Bureau of Prisons, followed by 12 months of home confinement, and three years of supervised release. Such a sentence is "sufficient, but not greater than necessary" to meet the sentencing goals under 18 U.S.C. § 3553.

## INTRODUCTION

Elias Eldabbagh acknowledges that he committed a serious offense. He is remorseful for his conduct, stating: "I know that I have committed a serious crime. I made this choice, to plead guilty, to begin to acknowledge the suffering, fear and loss I have caused others." Statement of Elias Eldabbagh at 1. He acknowledges the harm that he has caused to businesses and individuals who lawfully deserved funds that his fraudulent conduct made unavailable. *Id*. Mr. Eldabbagh understands that it is this Court's responsibility to impose a just sentence, and that there are serious consequences for his actions.

In imposing a sentence that is sufficient, but not greater than necessary, retribution is only one of many factors that must be considered. The Court must also consider the fact ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ As we will discuss in detail, these factors are directly relevant to Mr. Eldabbagh's offense.

The sentence in this case should provide a path forward for Mr. Eldabbagh by allowing him to get the help he needs, in the most effective way. We respectfully ask this Court to sentence Mr. Eldabbagh to a term of 42 months in prison, followed by 12 months of home confinement and three years of supervised release. As part of the supervised release conditions, this Court should order Mr. Eldabbagh to ████████████████████████████████████████████████████████

As discussed below, such a sentence strikes the right balance between the need for retribution and the need to provide rehabilitation. A longer sentence would be out of step with the sentences imposed for similar conduct in this District and throughout the nation. A greater period of incarceration for Mr. Eldabbagh would work an injustice by creating unwarranted disparities and ██████████████████████████████████████████████████████.

## FACTUAL BACKGROUND

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (internal citation omitted). Accordingly, it is appropriate to begin by considering Elias's[1] personal background, and how it relates to the offense of conviction.

██   ██████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

---

█   ██████████████████████████████████████████████
████████████████████████████████████████████████.













██████████████████████████████████████████████████████████

███████████████████████████████████████ █ ███████████████████

██████████████████████████████████████████████████████████

████████████████████████████



██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

─────────────────────────

█     ████████████████████████████████████████████████████████



█   ████████████████████████████████████

During this period, starting in July of 2020, Elias began submitting the fraudulent PPP and EIDL loan applications in this case. *See* PSR ¶ 47. The statement of offense, which Elias signed and fully acknowledges, accurately describes his offense. ECF 30 (Statement of Offense). As discussed therein, after fraudulently obtaining the loan proceeds, Elias then used those proceeds to invest in the stock market, to purchase cryptocurrency, and other items. *See* PSR ¶ 55-58. Elias understands that his conduct has caused significant financial harm to the taxpayers, financial institutions, and businesses that truly needed the funding during an unprecedented disaster. Statement of Elias Eldabbagh, at 1. Worse yet, Elias attempted to access funds that were subject to seizure even after being served with search warrant documents. *See* PSR ¶ 65. And even after being charged in this case and released on conditions, Elias attempted to obtain funds from Citibank that were subject to seizure. Ultimately, and deservedly, these actions resulted in the swift revocation of pretrial release.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████████████████

14







**SENTENCING ARGUMENT**

I. **APPLICABLE LAW.**

Federal sentencing is governed by 18 U.S.C. § 3553(a), which requires the sentencing Court to consider a multitude of factors in determining the appropriate sentence, including but not limited to the defendant's background and characteristics, the need for deterrence, and the need for rehabilitation. In considering these factors, section 3553(a) directs the sentencing court to "impose a sentence *sufficient but not greater than necessary*" to satisfy the purposes of sentencing as set forth in the Sentencing Reform Act (emphasis added).

It is well settled that the Federal Sentencing Guidelines are purely advisory, and that a district court may not presume a sentence within the Guidelines to be reasonable. *Gall*, 552 U.S. at 50. This Court must calculate the applicable Guidelines but may not rely on that range alone to determine the sentence. *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007) (citing *Gall*, 128 S. Ct. at 596-97). Instead, the Court must consider all Section 3553(a) factors.

The applicable law for individual sentencing factors will be discussed in greater detail in the individual sections below.

## II. THE SENTENCING GUIDELINES SHOULD NOT DETERMINE ELIAS'S SENTENCE.

### A. The Sentencing Guidelines Calculation.

The advisory guidelines are the starting point for every sentence. The parties agree that applying the guidelines results in the following calculation:

**Count Five (Wire Fraud)**

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(1) | Base Offense Level | 7 |
| U.S.S.G. § 2B1.1(b)(1)(K) | Intended loss greater than $9,500,000 | 20 |
| U.S.S.G. § 2B1.1(b)(10)(C) | Sophisticated means | 2 |
| U.S.S.G. § 2B1.1(b)(12) | Conduct described in 18 U.S.C. § 1040 | 2 |
| U.S.S.G. § 3C1.1 | Obstruction | 2 |
| | **Total (Count Five)** | 33 |

**Count Seven (Expenditure Money Laundering)**

| | | |
|---|---|---|
| U.S.S.G. § 2S1.1(a) | Base Offense Level | 31[7] |

---

[7]     The offense level for money laundering is the same as the underlying unlawful activity: the fraud. Thus, the base offense level for count seven is the offense level for count 5 without the obstruction enhancement, which is reapplied to count seven.

| | | |
|---|---|---|
| U.S.S.G. § 2S1.1(b)(2)(A) | Convicted under 18 U.S.C. § 1957 | 1 |
| U.S.S.G. § 3C1.1 | Obstruction | 2 |
| | **Total (Count Seven)** | 34 |
| **Acceptance of Responsibility** | | |
| U.S.S.G. § 3E1.1 | Acceptance of Responsibility | -3 |
| | **Total** | **31** |

Plea Agreement (ECF 29) at 3-4.[8]

The parties further agree that Elias has four criminal history points, as calculated in the PSR, PSR ¶¶ 83-91, placing him in Category III.

Thus, the advisory guidelines recommendation is 135-168 months. U.S.S.G. Ch. 5, Pt. A. For the reasons discussed below, there is a significant divergence between a fair sentence and the advisory guidelines range in this case.

### B.    The Fraud Guideline is not Empirically-Based and Results in an Excessive Advisory Range.

The fraud guideline's loss table, along with its Specific Offense Characteristics, are among the most heavily criticized and rejected aspects of the Federal Sentencing Guidelines. Boiled down to its essence, the criticism of the fraud guideline is that: (1) the loss table is not based on empirical data and overwhelmingly focuses on loss to the exclusion of other meaningful factors;[9] and (2) the

---

[8]    Both the government and Mr. Eldabbagh have objected to the PSR calculation. The calculation uses the wrong base offense level and does not follow the agreed upon loss amount from the plea agreement.

[9]    *United States v. Adelson*, 441 F. Supp. 2d 506, 514 509 (S.D.N.Y. 2006) ("[B]ecause of their arithmetic approach and also in an effort to appear 'objective,' [the Guidelines] tend to place

specific offense characteristics (such as sophisticated means) are redundant of the loss amount enhancements, and likewise often fail to act as meaningful proxies for culpability.[10]

Moreover, relying on intended loss can lead to perverse sentencing disparities where there is a significant difference between actual and intended loss. For example, a defendant who sought to obtain $25 million but was only successful in getting $1 million would be punished more harshly than a defendant who sought, and actually obtained, $24 million. Courts have recognized that, where there is a stark difference between the intended and actual loss amount, the intended loss figure can overstate the seriousness of the offense. *See, e.g.*, *United States v. Stockheimer*, 157

---

great weight on putatively measurable quantities, such as . . . [the] amount of financial loss in fraud cases, without, however, explaining why it is appropriate to accord such huge weight to such factors." (citing Kate Stith & Jose A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts*, 69 (1998))), *aff'd*, 301 F. App'x 93 (2d Cir. 2008); *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012) (imposing a sentence of 24 months imprisonment in insider trading case where Guidelines range was 78-97 months, based on inadequacy of fraud Guidelines); *Adelson*, 441 F. Supp. 2d at 509 (criticizing "the inordinate emphasis that the Sentencing Guidelines place in fraud on the amount of actual or intended financial loss" without any explanation of "why it is appropriate to accord such huge weight to [this] factor[ ]"); *see also United States v. Emmenegger*, 329 F. Supp. 2d 416, 427-28 (S.D.N.Y. 2004); *United States v. Brothers Construction Co.*, 219 F.3d 300, 319 (4th Cir. 2000) (pre-*Kimbrough* case upholding substantial downward departure despite high loss amount, finding that "the guideline [loss] amount overstated the seriousness of [that co-defendant's] individual conduct.").

[10]     In its Fifteen Year Report, The Sentencing Commission acknowledged that "as more and more adjustments are added to the sentencing rules, it is increasingly difficult to ensure that the interactions among them, and their cumulative effect, properly track offense seriousness." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing*, 137 (Nov. 2004), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-     and-surveys/miscellaneous/15-year-study/chap5.pdf (visited August 8, 2022); *see, e.g., United States v. Lauersen*, 362 F.3d 160, 164 (2d Cir. 2004) (subsequently vacated in light of *Booker*) (upholding departure to mitigate effect of "substantially overlapping enhancements" at the high end of the fraud sentencing table); *see also United States v. Parris*, 573 F. Supp. 2d 744, 745 (E.D.N.Y. 2008) (declining to impose a within-Guidelines sentence in a securities fraud case due to, among other factors, the cumulative effect of multiple enhancements "for which the guidelines have frequently been criticized") (internal quotation marks and citation omitted)).

F.3d 1082, 1091 (7th Cir. 1998). That is the case here, where the actual loss represents less than 10% of the intended loss.

Further, the intended loss figure in this case is little more than a theoretical number. Elias did not expect, and could never realistically have received, the total amount of loans for which he applied. This was evident immediately as many of his applications received swift rejections. While the guidelines suggest using the intended loss figure even if the economic harm would be impossible or unlikely to occur, U.S.S.G. § 2B1.1(b)(1) cmt. n. 3(A), even under the pre-*Booker* mandatory guidelines regime, courts could depart in cases where the intended loss was "almost certain not to occur." *United States v. Cutler*, 520 F.3d 136, 161 (2d Cir. 2008). Post-*Booker*, courts have broad authority to make adjustments where such a figure overstates the practical reality and seriousness of the offense. *See*, *e.g.*, *United States v. Portman*, 599 F.3d 633, 640 (7th Cir. 2010), *as amended* (Mar. 24, 2010) ("A court can consider the amount of variance between the intended loss and the realistic possibility of loss when considering an appropriate sentence.").[11]

In addition to these issues, there is also a lack of uniformity in the use of intended versus actual loss during the plea process, resulting in hidden but significant disparities in the sentencing process.

---

[11]    Mr. Eldabbagh does not argue that use of intended lose in his plea agreement is incorrect, rather he argues that this Court should reject the guidelines.

C.     **The Advisory Guidelines Vary Widely Based on Factors Uniquely Within the Government's Control.**

1.     *Charging Decisions.*

At least two hidden disparities exist at the outset of any fraud case: the prosecution's decision whether to charge the case as a conspiracy, and the decision to add on ancillary charges (like unlawful monetary transactions) that are present in virtually every financial crime.

In fraud cases, prosecutors frequently extend pleas to a conspiracy charge under 18 U.S.C. § 371, with no accompanying substantive charge. This caps the potential punishment at 60 months imprisonment. Although conspiracy is recognized as more serious in nature,[12] the potential punishment for a stand-alone charge is far less. Recent examples from PPP fraud cases include:

- ***United States v. Foad Darakhshan*, No. 1:21-cr-00267-LO (E.D. Va. Jul. 8, 2022)**: The defendant and his co-conspirators submitted 63 fraudulent Covid relief loans, of which 17 were approved totaling $3 million.[13] The defendant pled guilty to a single § 371 Conspiracy count. Plea, ECF 7, at 1. The government agreed to a loss amount between $1.5 and 3.5 million. *Id.* at 3. The defendant received a **33-month sentence**. Judgment, ECF 19.

- ***United States v. Tarik Jaafar*, No. 1:20-cr-00185-CMH (E.D. Va. Nov. 18, 2020) and *United States v. Monika Magdalena Jaworska*, 1:20-cr-00180-CMH (E.D. Va. Dec. 12, 2020)**:[14] Husband and wife defendants filed 18 fraudulent PPP loans for a total of $6.6 million. Jaafar Statement of Offense, ECF 36, ¶ 15. They fraudulently obtained $1.4 million. *Id.* Though initially charged with wire fraud, the husband pled to a single § 371 conspiracy count. Jaafar Plea Agreement, ECF 35, at 1. He received **12 months** imprisonment. Jaafar Judgment, ECF 67. The wife pled guilty to a single § 371 conspiracy count. Jaworska Plea, ECF 40, at 1. The government requested, and the court awarded a sentence of **time served**. Jaworska Gov.'s Sent'g Mem. ECF 47, at 1; Jaworska Judgment,

---

[12]    *Pinkerton v. United States*, 328 U.S. 640, 644 (1946) ("For two or more to confederate and combine together to commit or cause to be committed a breach of the criminal laws is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime.") (internal quotations and citations omitted).

[13]    DOJ Press Release available at https://www.justice.gov/usao-edva/pr/member-3m-covid-19-loan-fraud-conspiracy-sentenced.

[14]    We offer these cases to demonstrate a disparity in charging decisions. We concede, however, that in these instances the sentence received reflects both the charging decision and the fact that the defendants were able to repay their loss.

ECF 50. She served approximately 6 months. *See* Jaworska Order of Detention (Jun. 26, 2020), ECF 15.

*See also*, *e.g.*, *United States v. Charno*, No. 1:21-cr-00806-PAB (N.D. Ohio May 23, 2022) (defendant was responsible for over $18 million in intended loss by filing 40 false loan applications in a PPP fraud scheme involving an intended loss of $35.7 million where defendant was permitted to plead guilty to one § 371 conspiracy count, Gov.'s Sent'g Mem., ECF 64, at 1, 6, 14, and was sentenced to 24 months, Judgment, ECF 70); *United States v. Jericca Rosado*, No. 0:21-cr-60211-JEM (S.D. Fla. Dec. 7, 2021) (defendant was permitted to plead to a single § 371 count for participating in at least $1.3 million in fraudulent PPP loans as part of a wider $34 million PPP fraud conspiracy. Def.'s Sent'g Mem, ECF 47, at 1. The defendant was sentenced to 37 months. Judgment, ECF 50.); *United States v. Victoria Dieuy Ho*, No. 1:21-cr-00403-VEC (S.D.N.Y. July 20, 2022) (In a PPP fraud conspiracy involving an intended loss of $13 million and actual loss of $7.8 million,[15] the defendant was permitted to plead guilty to one § 371 conspiracy count and was sentenced to 24 months, Judgment, ECF 97); *United States v. Andre Clark*, No. 0:21-cr-60029-WPD (S.D. Fla July 30, 2021) (The defendant was responsible for an intended loss of over $7 million and actually received almost $500,000 as part of a $34-million PPP fraud conspiracy. Gov.'s Sent'g Mem., ECF 42, at 1, 6. The defendant had a significant criminal history including theft, forging currency, and a heroin distribution conviction. *Id.* at 9. The defendant was permitted to plead guilty to one § 371 conspiracy count and was sentenced to 33 months. Judgment, ECF 49); *United States v. Devonte Demond Thames*, No. 0:21-cr-60125-RKA (S.D. Fla. Oct. 21, 2021) (a defendant who received a false loan of $400,000 in a multi-million-dollar PPP fraud conspiracy,

---

[15]     DOJ Press Release covering arrest is available at https://www.justice.gov/usao-sdny/pr/3-defendants-arrested-over-13-million-fraud-scheme-obtain-loans-intended-help-small.

Fect. Proffer, ECF 39, at 1, was permitted to plead guilty to one § 371 conspiracy count, Plea, ECF 38, at 1, 4, and was sentenced to 31 months, Judgment, ECF 55); *United States v. See Wook Chung*, No. 1:21-cr-00053-JPB (N.D. Ga. Mar. 1, 2022) (A defendant pled guilty to one § 371 count and was sentenced to 18 months, Judgment, ECF 24, for his part in a PPP fraud conspiracy with an intended loss of at least $2 million, Def.'s Sent'g Mem., ECF 20, at 9.).

Outside of the PPP fraud context, examples include:

- ***United States v. Deryl Leon*, No. 1:18-cr-20403-KMW (S.D. Fla.):**[16] The defendant, in a complex fraud and laundering case involving over $600 million, pled to a single § 371 conspiracy count. Plea, ECF 12, at 1. This capped the sentence at 60 months despite a loss amount that would result in a sentencing range of 97-121 months independent of any other factor or even the base offense. *See* U.S.S.G. § 2B1.1(b)(1)(P) (adding 30 levels for a loss amount over $550 million); Sentencing Table (level 30). This scheme far outstrips Elias's behavior in every conceivable regard. For example: for the defendant's assistance in just one aspect of the scheme, he was offered $10 million, Statement of Offense, ECF 13, ¶ 37, which alone eclipses Elias's actual loss amount four-fold. The scheme sought to defraud the IRS out of hundreds of millions, *id.* ¶ 41, an amount far and away beyond any PPP loan scheme. The scheme involved forming multiple companies in multiple countries, international travel and shipping, and intense coordination over multiple years. *See generally id.* Elias, in contrast, sat at a computer and fired off slightly different versions of the same documents. In April 2015 alone, the defendant helped cycle nearly $600 million in an attempt to hide the criminal scheme. *Id.* ¶ 61. The defendant recruited others to the scheme. *Id.* ¶ 64. Even if, as seems likely, the defendant cooperated against his co-conspirators, a USSG § 5K1.1 or Rule 35 motion is the procedurally valid means of rewarding cooperators. Instead, the government capped the sentence at the outset by declining to bring a substantive fraud charge and by bringing no money laundering charge. The judgment in this case is sealed.

- ***United States v. Calvin Glover*, 1:18-cr-00346-RM (D. Colo. Oct. 28, 2020) and *United States v. Matthew Taylor*, 1:18-cr-00197-PAB (D. Colo. Mar. 3, 2020):**[17] Three defendants were convicted in a complex tax fraud netting over $7 million. The three formed a biodiesel company to take advantage of federal tax refund policies. Taylor Plea, ECF 97, at 7-10. The three laundered the proceeds. *Id.* at 11-13. The defendants also engaged in a drug distribution conspiracy. *Id.* at 15-16. Defendant Glover was charged by information with a single § 371 conspiracy count, which he pled to. Glover Plea, ECF 14, at 1.

---

[16]   AUSA Goemaat was counsel for the government in this matter.

[17]   AUSA Geomaat was counsel for the government on these matters.

Defendant Glover received **15 months**. Judgment, ECF 72. Defendant Taylor was sentenced to **83 months**. Taylor Judgment, ECF 197.[18]

Similarly, practically no economic offense is devoid of conduct that fits the definition of unlawful monetary transactions. *See* Justice Manual § 9-105.330(5) (noting that receiving and depositing unlawful funds in a clearly identifiable account, while technically money laundering activity often "merely constitutes the completion of the underlying offense"). Despite the ubiquity of such conduct in fraud cases, prosecutors frequently decline to include the additional available charge, creating a disparity:

- *United States v. Aditya Raj Sharma*, No. 0:20-cr-00261-DSD-TNL (D. Minn. Mar. 10, 2022): The defendant applied for nearly $10 million across 16 PPP loans. Gov.'s Sent'g Mem., ECF 93, at 2, 5. He received only a fifth of that amount. *Id.* at 2. Despite transferring $1.7 million for his personal use, the defendant was not charged with unlawful monetary transactions. *See id.* at 4. The defendant was sentenced to **60 months**. Judgment, ECF 99.

- *United States vs. Hunter Vanpelt*, No. 1:21-CR-00006-MHC (N.D. Ga. Jan. 10, 2022): The defendant fraudulently obtained $6 million in PPP loans. Information, ECF 1, ¶ 17. The defendant pled guilty to one count of bank fraud. Plea, ECF 52-1, at 1. No laundering offense was ever charged even though the defendant allegedly "moved the funds between bank accounts associated with various entities, and conducted other financial transactions, in order to, among other things, conceal the fact that [he] was not using the loan proceeds for payroll expenses." Compl., ECF 1, ¶ 12. The defendant was sentenced to **41 months**. Judgment, ECF 74.

- *United States v. James Bell*, No. 1:21-cr-00284-JDB (D.D.C. Dec. 12, 2021): The defendant obtained $2 million in a combination of fraudulent political contributions and PPP loans. Gov.'s Sent'g Mem., ECF 14, at 6. Despite engaging in similar cryptocurrency speculation to that of Elias, the defendant was never charged with money laundering. The defendant was sentenced to **46 months**. Judgment, ECF 24.

- *United States v. Lawrence Paul Schmidt*, No. 1:18-cr-00327-ABJ (D.D.C. Dec. 21, 2021): The defendant pled guilty to a single count of bank fraud. Plea, ECF 14, at 1. He engineered a fraud using his position of trust with several entities, to attempt to steal three quarters of a million dollars. Statement of Offense, ECF 15, ¶ 8. Despite dissipating nearly all of the funds received beyond the court's jurisdiction, *id.* ¶ 21, the defendant was not charged with money laundering. The defendant was sentenced to **36 months**. Judgment, ECF 23.

---

[18]     The third defendant passed away before sentencing.

- ***United States v. Sophia Kim*, No. 1:21-cr-00219-RC (D.D.C. Sep. 29, 2021)**: The defendant pled guilty to one count of bank fraud. Plea, ECF 49, at 1. The defendant obtained $1.5 million as part of several complex and targeted schemes. Statement of Offense, ECF 50, ¶ 11. The defendant made "120 credit card charges at MGM National Harbor Casino in Oxon Hill, MD, totaling approximately $1,068,026,"[19] and admitted that the funds she received as part of the scheme were not recoverable, *Id.* ¶ 12. Nevertheless, she did not face a money laundering charge. Moreover, she committed this offense while on supervised release for a prior federal fraud offense. Gov.'s Sent'g Mem., ECF 61, at 5, 7. She was sentenced to **42 months**. Judgment, ECF 69.

- ***United States v. Waveney Blackman*, No. 1:18-cr-00200-TFH (D.D.C. Mar. 18, 2019)**: The defendant fraudulently received $9.4 million in Medicaid claims. Statement of Offense, ECF 8, ¶¶ 14-15. Like Elias, the defendant put the money toward property and accounts in her own name, as well as dissipating a sizable portion to third-parties that could not be recovered. *Id.* ¶¶ 15-17. The defendant never faced a money laundering charge. The defendant was sentenced to **42 months**. Judgment, ECF 34.

- ***United States v. Tyrone Grandberry*, 1:18-cr-00372-PLF (D.D.C.)**: The defendant stole over $3.5 million in a Ponzi scheme, Gov.'s Sent'g Mem., ECF 34, at 11, laundered money for a separate fraudster, *id.* at 5-7, and used a fake passport. Despite claiming "the defendant engaged in three distinct types of relevant criminal conduct: (1) immigration fraud, (2) a Ponzi scheme, *and (3) money laundering*," *id.* at 2 (emphasis added), the government dismissed money laundering counts, *See* July 20, 2021 Minute Order. He only pled guilty to the wire fraud and passport violation (the latter adding zero points to the guidelines calculation). Plea, ECF 20, at 1, 3. The defendant received **24 months**. Judgment, ECF 61.

- ***United States vs. Didier Kindambu*, No. 1:20-cr-00260-RDA (E.D. Va. Oct. 27, 2021)**: Despite titling a section of its sentencing memo "Kindambu Launders and Then Willfully Misuses the Proceeds to Fund His Lavish Lifestyle," Gov.'s Sent'g Mem., ECF 55, at 6 (emphasis added), the government dropped all money laundering charges in a $2.5 million PPP fraud conspiracy, Plea, ECF 39, at 1. He was sentenced to just **33 months**, Judgment, ECF 64. Here, it appears that the defendant cooperated and received additional leniency based on the presence of sealed sentencing materials, but this does not explain the inconsistency with respect to money laundering charges.

---

[19]     DOJ Press Release available at https://www.justice.gov/usao-dc/pr/former-treasurer-and-comptroller-universal-ballet-foundation-pleads-guilty-15-million.

### 2.    *Use of Actual Versus Intended Loss.*

As discussed, loss amount overshadows every other aspect of fraud sentencing. As such, the decision between actual and intended loss in a plea agreement may significantly impact the guidelines range. The government routinely uses the lower amount in plea agreements:

- ***United States v. Michael J. Moller*, No. 1:20-cr-00088-MSM-LDA (D.R.I., Oct. 14, 2021)**: The defendant "submitted 11 fraudulent loan applications totaling $4,725,742 in his own name, and in the names of his father, the son of his girlfriend and the brother of his girlfriend. [The defendant] received $699,251 from these fraudulent loans[.]" *Id.* The parties agreed to an intended loss of 1.3 million, closer to the actual than the attempted. Plea, ECF 14 ¶ 4(a). The defendant was sentenced to **70 months**. Judgment, ECF 42.

- ***United States v. David Tyler Hines*, No. 1:21-cr-20011-MGC (S.D. Fla. May 17, 2021)**: The government initially alleged the defendant sought $13 million in fraudulent loans. Compl., ECF 1, at 7. Despite this intended loss, the sentencing guidelines calculation used the actual loss of $4.8 million. Plea, ECF 40, at 6. The defendant was sentenced to **78 months**. Amend. Judgment, ECF 62.

- ***Jaafar*, No. 1:20-cr-00185-CMH and *Jaworska*, 1:20-cr-00180-CMH**: In addition to allowing these defendants to plead to a conspiracy count, the government also calculated their sentence based on actual ($1.4 million) rather than intended loss ($6.6 million), Jaafar Statement of Offense, ECF 36, ¶ 15, applying the guideline for a loss between 550 thousand and $1.5 million in both cases. Jaafar Plea Agreement, ECF 35, at 1. At 3. Jaworska Plea, ECF 40, at 3.

Moreover, the government at times asks courts to substitute in a lower loss amount where, as here, "an untempered application of [the] loss table would result in an overstatement of the seriousness of the offense in the context of determining a fair and just sentence." *See*, *e.g.*, Gov.'s Sent'g Mem. at 3, *United States v. Muhammad Saleem Iqbal*, No. 1:16-cr-10006-WGY (D. Mass. Oct. 24, 2016), ECF 87 (asking the court to sentence the defendant as if the loss was $8 to 9 million, when in reality the defendant caused a loss exceeding $28 million).

### 3.    *Other Specific Offense Characteristics.*

A final discretionary choice that causes significant disparities in the guidelines calculation is the decision whether to include optional specific offense characteristics. The government routinely declines to include specific characteristics even though such characteristics are

warranted. *See*, *e.g.*, *Grandberry*, 1:18-cr-00372-PLF (not applying obstruction of justice enhancement where the defendant took steps to conceal his fraud, Gov.'s Sent'g Mem., ECF 34, at 3-4); *Kindambu*, No. 1:20-cr-00260-RDA (the government agreed not to seek an obstruction enhancement in a $2.5 million PPP conspiracy, Plea, ECF 39, at 2); *Glover*, 1:18-cr-00346-RM (no obstruction enhancement despite falsifying subpoena responses. Plea, ECF 14, at 13-15, 18-19)[20]; *Schmidt*, No. 1:18-cr-00327 (receiving no additional Plea enhancement for fleeing the country and requiring the government to endure the time and expense of extradition. Statement of offense, ECF 15, at 7; Plea, ECF 14, 2).

In sum, while the guidelines purport to be a systematic way to achieve consistent sentences, application decisions alone lead to impermissible disparities—especially in fraud cases. The § 3553(a) factors, by contrast, provide for a far more meaningful analysis, and are indispensable to determining a fair outcome.

## III. THE SECTION 3553(A) FACTORS WARRANT A SENTENCE SIGNIFICANTLY BELOW THE ADVISORY GUIDELINES.

### A. Elias Eldabbagh's History and Characteristics Warrant a Significant Downward Variance.

Significant reasons justify imposing a downward variance based on Elias's history and personal characteristics. He possesses many of the tools he needs to be a successful and productive member of society. ████████████████████████████████████

████████████████████████████████████████████

████████████████

---

[20]   *Compare Taylor,* 1:18-cr-00197-PAB, where a co-defendant agreed to receive an obstruction enhancement for the same conduct. Plea, ECF 97, at 13-15, 22. Even if Glover cooperated this should not obviate earlier obstructive conduct in determining a baseline.



**B.**    **A Below-Guidelines Sentence is Necessary to Avoid Sentencing Disparities and to Promote Respect for the Law.**

Similar offenses should be treated similarly at sentencing. The sentence sought by the government here is inconsistent with that principle. For example, in the context of PPP-related fraud cases, defendants who received gains comparable to Elias's are receiving only fractions of the sentence sought here:

31

| Case: | Approx. Loss Amount | Sentence |
|---|---|---|
| *United States v. Muge Ma*, No. 1:20-cr-00407-RMB (S.D.N.Y. Apr. 21, 2022) | $20,000,000 (intended)<br><br>$800,000 (actual) | 52 months |
| *Hines, No. 1:21-cr-20011-MGC* (discussed above) | $13,000,000 (intended)<br><br>$4,800,000 (actual) | 78 months. |
| *United States vs. Andrew Aaron Lloyd, 6:21-CR-00198-MC (D. Ore. Jan. 6, 2022)* | $3,500,000 (actual) | 48 months[21] |
| *United States vs. Devonte Demond Thames*, No. 0:21-cr-60125-RKA (S.D. Fla. Oct. 21, 2021) | $1,500,000 to $3,500,000 (agreed range) | 31 months |
| *United States vs. Benjamin Hayford*, No. 4:20-cr-00088-CVE (N.D. Okla. Dec. 9, 2020) | $8,000,000 (intended) | 24 months |
| *Hunter Vanpelt, No. 1:21-CR-00006-MHC* (discussed above) | $6,000,000 (actual) | 41 months |
| *United States vs. Tristan Bishop Pan*, No. 5:20-CR-00436-TWB (E.D.N.C. Mar. 15, 2022) | $6,100,000 (intended)<br><br>$1,700,000 (actual) | 20 months |
| *United States vs. Mukund Mohan*, No. 2:21-cr-00041-JCC (W.D. Wash. Aug. 24, 2021) | $1,700,000 (actual) | 24 months |

---

[21]     This includes a consecutive 24-months for aggravated identity theft.

| *United States v. Leonel Rivero*, No. 1:21-cr-20160-KMW (S.D. Fla. Nov. 17, 2021) | $2,300,000 (intended) $900,000 (actual) | 24 months |
|---|---|---|
| *United States v. Nadine Consuelo Jackson*, No. 3:20-cr-00112-MJN (S.D. Ohio | $2,600,000 (intended) $2,300,000 (actual) | 24 months |

This disparity is evident even though it appears that the government has sought more significant sentences in PPP cases, likely as a product of the Administration's policy regarding such cases.[22] But regardless of such policies, courts retain independence, plenary discretion and the duty to impose sentences that are consistent with all of the principles of fairness and proportionality set forth in Section 3553(a). To be sure, fraud involving pandemic relief funds is a serious offense, with real consequences, and is therefore deserving of serious punishment. However, an administrative pronouncement does not render PPP fraud any more serious than other frauds, such as those involving theft of money from investors, charitable or religious organizations, senior citizens, veterans, etc. There is no basis in logic or in fairness to treat PPP cases more harshly than other types of fraud. Yet, that would be the result of imposing the sentence sought by the government, as demonstrated by the following cases:

- ***United States v. Robert S. Stewart, Jr.*, No. 1:21-cr-00005-RDA (E.D. Va. Jun. 17, 2021)**: Bridging the gap, this defendant engaged in three distinct schemes to profit from the pandemic and the Department of Veterans' Affairs. First, the defendant lied to the VA and Federal Emergency Management Agency—both in dire need of medical supplies—about

---

[22]     *See*, *e.g.*, Fact Sheet: President Biden to Announce New Steps to Combat Criminal Fraud and Identity Theft in Pandemic Relief Programs (discussing "Heightened Resources and Enhanced Penalties for Egregious Pandemic Fraud in Areas Like PPP Loans and [unemployment insurance]"), available at https://www.whitehouse.gov/briefing-room/statements-releases/2022/03/01/fact-sheet-president-biden-to-announce-new-steps-to-combat-criminal-fraud-and-identity-theft-in-pandemic-relief-programs/.

his ability to supply N-95 masks—securing nearly $40 million in federal contracts. Gov.'s Sent'g Mem., ECF 14, at 2-3. The contracts were canceled when he failed to deliver. *Id.* Second, the defendant secured over $1 million in PPP and EIDL loans. *Id.* at 4. All the while, the defendant continued a long-running fraud to secure VA benefits. The defendant was sentenced to **21 months**. Judgment, ECF 17.

- *United States v. Ephonia Green*, No. 1:13-cr-00310-BAH (D.D.C. July 28, 2014): The defendant embezzled over $5.1 million from a nonprofit, the Association of American Medical Colleges, over a period of eight years. Statement of Offense, ECF 5, at 2. This nonprofit provides services to the academic medicine community, such as administering the MCAT, and requires vendors to provide its services. The defendant created three false entities and submitted false invoices to the AAMC to receive payment for services she never provided. She was sentenced to **46 months**.

- *United States v. Todd Eliott Hitt,* Case No. 1:19-CR-000043-LBM (E.D. Va. Jun. 21, 2019): The defendant solicited $30 million from investors for real estate and venture capital investments over the course of four years.[23] He made false statements to investors and used the funds to finance a lavish lifestyle and pay off old investors in a Ponzi-like fashion, causing approximately $20 million in losses. He pled guilty to one count of securities fraud (15 U.S.C. § 78j(b)). He was sentenced to **78 months**.

- *United States v. Mark Stopchinski*, No. 1:10-CR-00252 (E.D. Va. Jul. 8, 2011):[24] The defendant perpetrated a sophisticated scheme to defraud health insurance customers into also purchasing life insurance and used the identities of his employees to avoid tax liability on the fraudulent commission payments. His conduct included forging his own employees' names and social security numbers so they would bear the tax liability of the commissions. The fraud persisted for 12 years despite two prior administrative orders to "cease and desist." He was sentenced to **36 months**.

- *United States v. Amanda Knorr*, No. 2:15-cr-00398-JHS (E.D. Pa. Apr. 9, 2019):[25] The defendant was sentenced to **30 months** in prison and ordered to pay $54 million in restitution, after she pled guilty in connection with a Ponzi scheme believed to be the biggest clean energy scam in American history. Together with a co-defendant, she founded a company, Mantria Corp. that raised more than $54 million from over 300 investors based

---

[23]    DOJ Press Release available at https://www.justice.gov/usao-edva/pr/former-kiddar-capital-ceo-sentenced-prison.

[24]    FBI Press Release available at https://archives.fbi.gov/archives/washingtondc/press-releases/2011/northern-virginia-insurance-agent-sentenced-to-36-months-in-prison.

[25]    *See* Brian X. McCrone, *Temple Grad Given 30 Months in Prison for $54 Million 'Green Scam' by Mantria Corp.*, NBC10 Philadelphia (Apr. 5, 2019), available at https://www.nbcphiladelphia.com/news/green/temple-grad-given-30-months-in-prison-for-54-million-green-scam-by-mantria-corp/113982/.

on promises that they could earn high returns by investing in a clean energy product known as "biochar."

- ***United States v. Glen Burke*, No. 2:16-cr-00262-JAD** (D. Nev. Mar. 14, 2018): The defendant ran two predatory schemes that defrauded many elderly victims out of over $20 million.[26] The first scheme misled consumers by mailing them letters in which they falsely reported the victim had won a large cash prize. The victim was to pay a fee to claim the winnings. The second scheme involved telemarketers misleading victims into thinking they had won a large cash prize and asking for a large fee to claim the prize. He was sentenced to **87 months**.

- ***United States v. Monica Ruiz*, No. 6:20-cr-00092-JDK (E.D. Tex. Sept. 14, 2021)**: The defendant incorporated various methods under false pretenses, representations, and promises to defraud an elderly victim of over $4.85 million.[27] These false representations included the defendant's claim that her son died, that her daughter was in a mental institution, that she had brain surgery, and that she had been in a coma. The defendant impersonated other people for the scheme to succeed. She was sentenced to **97 months.**

- ***United States v. Nimesh Shah*, No. 3:19-cr-04551-JAH (S.D. Cal. Oct. 27, 2020)**: The defendant defrauded the VA of almost $30 million in veteran benefits over three years.[28] He provided false documents, created fake student information, and falsified employment information to deceive regulators and receive funds for his technical training school and himself. He lied about the school's employment statistics, which falsely represented that a vast majority of the students were employed after graduation, which many were not. He was sentenced to **45 months**.

- ***United States v. Romana Leyva*, No. 1:19-cr-00667-PAC (S.D.N.Y. Jan. 24, 2022)**: The defendant entered a conspiracy that defrauded approximately 7,500 elderly victims of over $10 million. The conspiracy involved remotely accessing the computers of elderly victims and creating pop-ups that claimed a virus had infected the computer. The victim would purchase computer support services that were, in fact, not needed and never received. The defendant participated by creating fraudulent entities to receive the funds from the victims as well as recruiting and teaching others. She was sentenced to **100 months**.

---

[26]     DOJ Press Release available at https://www.justice.gov/usao-nv/pr/las-vegas-resident-sentenced-multimillion-dollar-prize-promotion-scams-targeting-elderly.

[27]     DOJ Press Release available at https://www.justice.gov/usao-edtx/pr/louisiana-woman-sentenced-48-million-Elder-fraud-scheme.

[28]     DOJ Press Release available at https://www.justice.gov/usao-sdca/pr/owner-local-technical-training-school-sentenced-defrauding-va-out-almost-30-million-gi#:~:text=SAN%20DIEGO%20%E2%80%93%20Nimesh%20Shah%2C%20owner,Bill%20benefits.

*See also United States v. Marc A. Bell*, No. 1:15-cr-00190-ESH (D.D.C. May 4, 2016) (defendant sentenced to 48 months for tax fraud with loss amount of $42,000,000 (conspiracy) and $4,400,000 (individually)); *United States v. Frank DiBenedetto*, No. 2:18-cr-00462-DS (D. Utah Feb. 10, 2021) (defendant sentenced to probation for tax fraud with loss amount in excess of $25,000,000); *Gupta*, 904 F. Supp. 2d 349 (defendant sentenced to 24 months for insider trading with a loss range of $5,000,000 to $15,000,000); *United States v. Robert Evans*, 1:18-cr-00103-EGS (D.D.C. Aug. 1, 2022) (defendant sentenced to 60 months for extortion with a loss amount of $4,000,000); *Iqbal*, No. 1:16-cr-10006-WGY (defendant sentenced to 42 months for tax fraud with a loss amount of $28,000,000).

Perversely, although Elias has fully accepted responsibility for his conduct, the government seeks to punish him more severely than individuals who refused to do so. Just this past month, for example, a defendant who went to trial on PPP fraud charges with an intended loss of $27 million, and an actual loss of $3 million, and had a criminal history category of IV, was sentenced to **132 months (11 years)** in prison. *United States v. Robert Benlevi*, No. 2:21-cr-00246-PA (C.D. Cal. Jul. 22, 2022); *see also United States v. Bikundi*, 926 F.3d 761, 776, 797 (D.C. Cir. 2019) (affirming trial convictions and sentences for married couple—120 months for the wife and 84 months for the husband—who engaged in an $81 million health care fraud scheme); *United States v. Tarkara Cooper*, No. 1:15-cr-00152-CJN (D.D.C. Aug. 4, 2017) (a defendant who went to trial in a $4.6 million fraud case, Gov.'s Sent'g Mem., ECF 237, at 4, was sentenced to 63 months, Judgment, ECF 246); *United States vs. Eric Shibley*, No. 2:20-cr-00174-JCC (W.D. Wash. Apr. 4, 2022) (A jury convicted the defendant of seeking $3.5 million over 25 fraudulent PPP loans. Gov.'s Sent'g Mem., ECF 148, at 8. He obtained $2.8 million. *Id.* The defendant had two prior domestic violence arrests and committed two separate domestic violence assaults on pretrial release. *Id.* at

12. The Defendant received 48 months. Judgment, ECF 159.); *United States v. Eleanor Milligan*, No. 1:19-cr-00424-TJK (D.D.C. Oct. 26, 2021) (the defendant—convicted at trial for stealing $1.6 million, Gov.'s Sent'g Mem., ECF 70, at 1—was sentenced to 72 months for fraud with a consecutive 24 months for identity theft, Judgment, ECF 81); *United States v. Edward Dacy*, No. 1:14-cr-00153-RBW (D.D.C. Aug. 27, 2015) (the defendant—convicted by a jury for his role in a $3.4 million mortgage fraud scheme, Gov.'s Sent'g Mem., ECF 123, at 2—was sentenced to 72 months, Judgment, ECF 135); *United States v. Tarek Abou-Khatwa*, No. 1:18-cr-00067-TSC (D.D.C. Jun. 1, 2021) (The defendant was convicted at trial of a $3.8 million health insurance fraud scheme, Gov.'s Sent'g Mem., ECF 163, at 4, and sentenced to 70 months, Judgment, ECF 192).

In considering disparities, the Court must also consider individual differences between and among defendants. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ are receiving mere fractions of the sentence the government seeks here:

- ***Kindambu*, No. 1:20-cr-00260-RDA**: The defendant had millions of dollars in assets including—by his own admission—$4 million in offshore assets, a $2 million business, and four aircraft. Def.'s Obj. to PSR, ECF 48, at 2. The court noted that the defendant was "in an income status that most people in this country would just love to experience." Sent'g Hr. Tr., ECF 73, at 28. The defendant was not "facing any significant crisis or other desperate circumstances that might explain (though never excuse) this crime," rather, he "had ample resources and business prospects" and committed his offense because he "wanted to live a life of considerable luxury." Gov.'s Sent'g Mem., ECF 55, at 9-10. He stole $2.5 million, *id.* at 8, and was sentenced to just **33 months**, Judgment, ECF 64.

- ***Muge Ma*, No. 1:20-cr-00407-RMB**: the defendant applied for $20 million in PPP loans. "When the defendant committed the instant offense, he had obtained an MBA, had earned a six-figure salary for several years, and was living in a $1.5-million-condo in Manhattan." Gov.'s Sent'g Mem., ECF 64, at 16. As previously noted, the defendant was sentenced to **52 months**. Judgment, ECF 66.

- *United States vs. Konstantino Zarkadas*, **No. 2:21-cr-00363-GRB (E.D.N.Y. Mar. 18, 2022)**: The defendant, a medical doctor, applied for and received 11 fraudulent Covid relief loans throughout the pandemic netting nearly $4 million.[29] He used $3 million—more than Elias ever acquired—to purchase a luxury yacht. *Id.* he was sentenced to **51 months**. Judgment, ECF 26.

- *United States v. Maurice Kamgaing*, **No. 3:21-CR-00114-KDB (W.D.N.C. Jan. 6,** 2022): The defendant fraudulently obtained $1.5 million in PPP loans.[30] By his own admission, the defendant was a highly skilled cybersecurity professional making over $200,000 a year when he applied for loans he did not deserve. Def.'s Sent'g. Mem., ECF 26, at 13. He was sentenced to **33 months**.

- *United States v. Clayton Marlow Anderson*, *Jr.*, **3:18-cr-03075 (S.D. Cal. 2018)**. According to the government, between 2005 and 2014, the defendant, an attorney, "solicited unsecured loans from six individuals and paid them high rates of interest between 8% and 13% each year. However, [the defendant] eventually refashioned these unsecured loans as an 'investment' with guaranteed interest, and pitched the investment to his legal clients."[31] In addition, after winning an $1.8 million judgment on behalf of a client and paying the client its share of the proceeds, the defendant "repeatedly solicited them . . . promising [the client] a 13% annual return on their 'investment.'" He admitted in pleading guilty that he made multiple materially false claims to investor-clients and violated his duty as an attorney. The losses he caused to investors totaled over $1.3 million. He was sentenced to **18 months**.

**C.**     **Rehabilitation, Rather than a Long Period of Incarceration, Will Most Effectively Achieve Specific Deterrence.**

---

[29]     DOJ Press Release available at https://www.justice.gov/usao-edny/pr/long-island-Physician-sentenced-51-months-prison-covid-19-loan-fraud.

[30]     DOJ Press Release available at https://www.justice.gov/usao-wdnc/pr/archdale-nc-man-Sentenced-almost-three-years-prison-covid-19-relief-fraud.

[31]     DOJ Press Release available at https://www.justice.gov/usao-sdca/pr/disbarred-attorney-sentenced-prison-defrauding-former-clients-and-investors.





### 2.   A Prison Sentence Within the Advisory Guidelines Range is Excessive for Purposes of Achieving Specific Deterrence.

Although Elias has incurred several misdemeanor convictions, he has never received a prison sentence. Courts have recognized that lengthy periods of incarceration are not necessary to deter such individuals, because *any* term of incarceration has a greater deterrent on those who have not previously been subject to a lengthy period of incarceration (or, like Elias, any incarceration at all). *See*, *e.g.*, *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming non-guideline sentence of 78 months from 108 months, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in § 3553(a)(2)(A) and "adequate deterrence" in § 3553(a)(2)(B)); *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than



is necessary to deter a defendant who has already served serious time yet continues to re-offend.").[35]

### D.   The Need for Just Punishment Does Not Justify a Sentence in the Advisory Guidelines Range.

As with all other sentencing considerations, the law prohibits a sentence that is greater than necessary to achieve retribution. In addition to the substantial punishment of a 42-month custodial sentence followed by 12 months of home confinement, the Court should also consider non-incarcerative punitive aspects of Elias's prosecution and conviction.

Public prosecution and conviction, in itself, is a substantial punishment. *See, e.g., United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) ("the need for further deterrence and protection of the public is lessened because the conviction itself already visits substantial punishment of the defendant")*; United States. v. Smith,* 683 F.2d 1236, 1240 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive."); *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012) ("Sometimes [courts do not] fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed."); *United States v. Wulff,* 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation.").

Indeed, a simple Google search of Elias's name returns numerous articles discussing the charges against him and his guilty plea. *See, e.g.,* Gina Kim, *DC Man Cops to Using $2.4M in*

---

[35]     These findings are consistent with empirical research of white collar sentencing, which found that no meaningful deterrent effect resulting from harsh sentences. *See* David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995); *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 448-49 (2007) ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.").

*PPP Loans of Tesla, Crypto*, Law360 (April 11, 2022)[36]; Ivy Lyons, *DC Man Steals Over $2 million in COVID-19 Funding,* WTOP (April 9, 2022)[37]; Paul Duggan, *Man Admits to Stealing $31-Million in Pandemic Relief Funds*, Wash. Post (incorrectly reporting that "[t]hrough his company, Alias Systems, he received more than $30 million in 25 separate paycheck-protection loans and nearly $1 million in loans from the economic injury program from July 2020 to May last year . . .."). [38]

 This information will follow Elias for the rest of his life. It is a fact of modern life that people turn to the internet to "look up" who they are dealing with, both socially and professionally. Wherever he goes for the rest of his life, Elias will be viewed with suspicion and caution, regardless of the amount of time he ultimately serves in prison. Anyone considering doing business with Elias, or hiring him for a job, will need only run a Google search to find all the information they need to understand his criminal conduct.[39]

Elias understands that these consequences are deserved. However, we respectfully ask the Court to consider their practical impact as a part of the sentence in this case.

---

[36]     https://www.law360.com/articles/1482568/dc-man-cops-to-using-2-4m-in-ppp-loans-for-tesla-crypto

[37]     https://wtop.com/dc/2022/04/dc-man-steals-over-2-million-in-covid-19-funding/

[38]     https://www.washingtonpost.com/dc-md-va/2022/04/09/guilty-plea-covid-relief-fraud/

[39]     There is also a deterrence component to this: while we submit that with there is no risk that Elias will return to criminal conduct in the future, perpetrating a fraud under this microscope will be nearly impossible. For this reason, a lengthy term of incarceration is not necessary to achieve specific deterrence.

### E.      A Split Sentence Followed by Supervised Release Will Best Serve All of the Goals of Sentencing.

Because the guidelines are no longer binding on district courts, this is also true of the provisions controlling the types of sentences that are available based on the defendant's offense level. The Court is free to impose any sentence it deems appropriate, including a split sentence, where some of the period of incarceration is served in home or community confinement.

A split sentence, along with supervised release or other non-custodial elements is particularly appropriate in this case. ████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████ A split sentence will provide just that: a gradual decrease in restrictions and supervision from prison, to community confinement,[40] to home confinement, and finally to supervised release. This approach will ensure that Elias is making appropriate progress to address the underlying causes of his offense conduct.

A period of home confinement will have the added benefit of placing Elias under the supervision of his family. ██████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████ Support

---

[40]      BOP Policy is to place inmates in community confinement for a period of time at the end of their sentence. 28 C.F.R. § 570.22 ("Inmates will be considered for pre-release community confinement . . . determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community . . ..")

from family members and others in the community has been found to be a factor that lessens the chances a defendant will re-offend. *See*, *e.g.*, *United States v. Autery*, 555 F.3d 864, 874 (9th Cir. 2009) (family support one of several valid grounds for downward variance from 41-51 months to probation); *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008) (family support one of three valid reasons for 91-month downward variance); *United States v. Parker*, 2011 WL 6013073, at *2-3 (D.N.M. Nov. 23, 2011) (citing the defendant's "supportive family structure" in granting a downward variance).

Elias also recognizes that restitution is an important obligation and returning to work is the only practical way for him to ameliorate the financial harm of his offense. A split sentence with special conditions (such as a prohibition on borrowing money without prior approval) would allow Elias to start working sooner so that he can begin making restitution payments, while still restricting and monitoring Elias's activity in a manner consistent with the purposes of sentencing. The Supreme Court has recognized that supervised release is a significant and punitive measure. *See Gall*, 552 U.S. at 48 n.4 ("probation is not merely 'letting an offender off easily'" (quoting Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13–14 (1957)). Once he completes his term of home and community confinement, the terms of supervised release will restrict who Elias can associate with, where he can travel, what kind of work he does, and whether he can open lines of credit.

For all these reasons, under the specific facts of this case, a split sentence followed by supervised release will best achieve all of the goals of sentencing.

### F. Credit for Time Served.

Elias was initially detained in connection with this case on or about February 4, 2022. Respectfully, because he has been continuously held in US Marshals' custody since that date, he requests credit for his time served starting on that date.

### G.      Restitution, Forfeiture Payment and Interest Schedule.

Given that Elias will be incarcerated for a period of time, we respectfully request that the Court defer collection of restitution and forfeiture (excepting the sum covered by forfeited assets) until the beginning of any period of supervised release. For these reasons, we also ask the Court to forgive interest on both restitution and forfeiture, requiring him to pay only the principle.

**CONCLUSION**

For all of the foregoing reasons, we ask the Court to impose a sentence of 42 months incarceration, followed by 12 months of home confinement, and three years of supervised release.

Respectfully submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov (DC Bar 979785)
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
Telephone: (202) 386-6920
eugene@burnhamgorokhov.com