UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>v.<br>**ELIAS ELDABBAGH,**<br>Defendant. | Case No. 1:21-cr-00523 (TNM) |

**MEMORANDUM ORDER**

As America grappled with a once-in-a-lifetime health crisis, Elias Eldabbagh saw a business opportunity and built it on fraud. Using various stolen identities, Eldabbagh fraudulently applied for over $31 million in emergency COVID-era loans and successfully directed $2 million into his coffers. Sentencing Tr. at 72:12–72:17, ECF No. 67.

In 2022, the Court sentenced Eldabbagh to 120 months' imprisonment for his scheme. Judgment at 2, ECF No. 57. Now, Eldabbagh moves this Court to either reduce his sentence due to changes to the Guidelines impacting criminal history "status points," *see* Amend. 821 (Part A), U.S.S.C. (eff. Nov. 1, 2023), or to grant him compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* Mot. Sentence Reduction ("Mot.") at 3, ECF No. 70.

Eldabbagh prevails on neither request. On the first, Eldabbagh's original sentence falls below his amended Guidelines range, which alone precludes relief. *See* U.S.S.G. § 1B1.10(b)(2)(A). On the second, Eldabbagh has not established extraordinary and compelling reasons justifying a sentence reduction. The Court thus denies Eldabbagh's motion.

**I.**

Eldabbagh planted the seeds for his multi-million-dollar fraud scheme in 2018, when he stole his roommate's identification and social security card. Presentence Report ("PSR") ¶ 45,

ECF No. 38. After stealing a company's documents containing more unsuspecting victims' personal information, *id.* ¶ 46, Eldabbagh cashed in. With the stolen identities, he submitted no fewer than 25 applications to COVID-era loan programs and sought no less than $31 million in "relief." *Id.* ¶¶ 47–50; Sentencing Tr. at 72:12–72:17. His efforts successfully directed $2 million into his bank accounts. PSR ¶ 52. While other Americans used the same federal loan programs to save their small businesses and cover rent, Eldabbagh used his fraudulently obtained proceeds to buy a Tesla, designer clothes, electronics, and to pay attorney's fees. Sentencing Tr. at 72:21–72:23. Eventually, federal officers put a stop to Eldabbagh's initial activity when he was arrested in August 2021. PSR at 1. Even while under strict pretrial conditions, however, Eldabbagh persisted and tried to defraud a bank of more than $230,000. Bond Rev. Tr. at 7:07–8, ECF No. 34. This stunt earned him pretrial detention. *Id.* at 10:17–10:19.

In April 2022, Eldabbagh pled guilty to wire fraud in violation of 18 U.S.C. § 1343 and to money laundering in violation of 18 U.S.C. § 1957. PSR ¶ 4; Plea Agreement at 1, ECF No. 29. This Court, upon review of the entire record and after carefully considering the 18 U.S.C. § 3553(a) factors, sentenced Eldabbagh to 120 months' incarceration for each count, to be served concurrently, followed by 36 months of supervised release. Judgment at 2–3; Sentencing Tr. at 80:22–83:14. Now, Eldabbagh moves for a sentence reduction based on Amendment 821 to the Sentencing Guidelines and the compassionate release statute. 18 U.S.C. § 3582(c)(1)(A). He also moves the Court to appoint him counsel. Mot. Appoint. Counsel, ECF No. 76. These motions are now ripe.[1]

---

[1] Eldabbagh separately moves the Court to change his address. *See* Mot. Change Address, ECF No. 73. The docket currently reflects the address Eldabbagh mentions in the change-of-address motion, so the Court denies this motion as moot.

## II.

Before turning to the substance of Eldabbagh's motion, the Court addresses his request to appoint counsel. *See* Mot. Appoint. Counsel.

The Sixth Amendment right to counsel "extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). That is why courts routinely recognize that for sentence reduction motions like Eldabbagh's, courts may—but need not—appoint counsel. *See, e.g.*, *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) (explaining that "the decision whether to appoint counsel" for a § 3582(c)(2) motion "rests in the discretion of the district court"). *United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir. 1999) ("How a district judge elects to consider a § 3582(c) motion to reduce a sentence is largely a matter of discretion. The judge can appoint counsel for a [§ 3582(c)] movant, but need not do so.").

Courts appoint counsel in proceedings under § 3582(c) only "if the interests of justice so require" it. *United States v. Evans*, No. 1:18-cr-103, 2020 WL 3542231, at *3 n.3 (D.D.C. June 30, 2020) (cleaned up); *cf. United States v. Scurry*, 992 F.3d 1060, 1069 (D.C. Cir. 2021) (per curiam) (discussing the "interests of justice" standard for appointing counsel in the 28 U.S.C. § 2255 setting). Generally, the interests of justice do not call for the appointment of counsel in straightforward cases where a petitioner is unlikely to succeed on the merits of his claim. *See United States v. Lawrence*, No. 97-3095, 1998 WL 545406, at *1 (D.C. Cir. July 14, 1998) (per curiam) (noting that an "insufficient likelihood of success on the merits" cuts against appointing counsel in the post-conviction setting); *see also United States v. Mala*, 7 F.3d 1058, 1063–64 (1st Cir. 1993) (listing various factors as relevant to whether the interests of justice call for appointed

counsel). Eldabbagh's case falls in that category and thus does not prompt appointment of counsel.

For starters, Eldabbagh's motion involves straightforward claims that he has adequately handled unaided. Indeed, Eldabbagh requested counsel more than two months *after* he moved for a sentence reduction. *Compare* Mot. (filed on June 18, 2024), *with* Mot. Appoint. Counsel (filed on August 28, 2024); *see also United States v. Campbell*, 771 F. Supp. 2d 1, 5 (D.D.C. 2011) (denying motion to appoint counsel to assist with post-conviction motion where defendant had already filed the post-conviction motion). And the sentence reduction motion he filed features several coherent theories and legal authorities, confirming that Eldabbagh has the sophistication necessary to make legal arguments on his own behalf. *Accord United States v. Waite*, 382 F. Supp. 2d 1, 2 (D.D.C. 2005) (declining to appoint counsel to assist with a § 2255 motion where defendant herself was "able to articulate lucidly the legal basis" for her motion). Eldabbagh's case does not involve issues so "factually complex" or "legally intricate" that he could not sufficiently handle them. *See Mala*, 7 F.3d at 1064.

Separately, Eldabbagh is unlikely to succeed on any of his claims, as the Court details below. Shortcomings on the substance further diminish his need for appointed counsel. *See Lawrence*, 1998 WL 545406, at *1 ("Appellant has demonstrated insufficient likelihood of success on the merits to support a determination that the interests of justice require appointment of counsel."). Because Eldabbagh has failed to show the interests of justice require counsel, the

Court denies his motion.

## III.

### A.

Turning to the merits, the Court first considers Amendment 821's effect on Eldabbagh's sentence. About a year after the Court sentenced Eldabbagh, the U.S. Sentencing Commission promulgated Amendment 821, which changes how "status points" affect criminal history calculations. *See* Amend. 821 (Part A), U.S.S.C. (eff. Nov. 1, 2023). Under that amendment, the Guidelines no longer add two "status points" to an offender's criminal history score for "committ[ing] the instant offense while under any criminal justice sentence." *Id.* Now, offenders like Eldabbagh, who committed the present crime while on probation for a different crime, no longer receive status points for that circumstance alone. *See* U.S.S.G. § 4A1.1(e).

For the change to render Eldabbagh eligible for a reduction, the Court must first determine whether his original Guideline range has since been lowered through a retroactive amendment to the Guidelines. *See* 18 U.S.C. § 3582(c)(2); *Dillon v. United States*, 560 U.S. 817, 825–26 (2010). The Court does so by asking what Eldabbagh's Guideline range would have been had Amendment 821 been in effect when he was originally sentenced. *Dillon*, 560 U.S. at 825–26. At that point, the Commission's "applicable policy statements" instruct that if his old sentence falls below the new Guideline minimum, the Court may not further reduce it. *See id.* at 826; U.S.S.G. § 1B1.10(b)(2)(A); 18 U.S.C. § 3582(c)(2) (requiring that any reduction under Amendment 821 satisfy the Commission's "applicable policy statements").

These requirements bar the relief Eldabbagh seeks. Amendment 821 leaves him with only four criminal history points instead of six, which places Eldabbagh in Criminal History Category II instead of III. *See* Mot. at 31; Sentencing Tr. at 12:01–12:19; Plea Agreement at 4–

5. Paired with his total offense level of 31, Eldabbagh's advisory Guidelines range changes from 135 to 168 months' imprisonment to 121 to 151 months' imprisonment. U.S.S.G. Ch. 5 Pt. A (Sentencing Table). The trouble for Eldabbagh is that his old sentence (120 months' imprisonment) falls below the new Guidelines floor (121 months' imprisonment). This reality ties the Court's hands. *See* U.S.S.G. § 1B1.10(b)(2)(A) ("[T]he court *shall not* reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range . . . ." (emphasis added)). Eldabbagh's request thus fails.

**B.**

Next, consider Eldabbagh's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). A defendant seeking compassionate release has a steep hill to climb. First, he must show that "extraordinary and compelling reasons" warrant it. 18 U.S.C. § 3582(c)(1)(A)(i). Even if he can surmount that hurdle, he must also show that release "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(ii). The applicable policy statement requires him to show that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). And even then, he must show that the sentencing factors in 18 U.S.C. § 3553(a) justify release. *See United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (affirming decision to deny compassionate release based on the balance of factors in § 3553(a), even though there were "extraordinary and compelling reasons" for release and the defendant posed no danger).

Eldabbagh falters at the first step. He has not established "extraordinary and compelling" reasons that justify his release, so the Court denies his request.[2] "An extraordinary reason must be most unusual, far from common, and having little or no precedent." *United States v. Jenkins*, 50 F.4th 1185, 1197 (D.C. Cir. 2022) (cleaned up). "[A] compelling reason must be both powerful and convincing." *Id.* (cleaned up). Eldabbagh offers four allegedly extraordinary and compelling circumstances: (1) changes to the Guidelines through Amendment 821; (2) the Court's use of intended loss instead of actual loss to determine his sentence; (3) his alleged husband's bleak health circumstances; and (4) his rehabilitative progress in prison. Mot. 11–30. None of these circumstances satisfy Eldabbagh's heavy burden.

*Guidelines Amendment 821.* Eldabbagh's lower Guideline range under Amendment 821 does not qualify as an extraordinary and compelling circumstance. Under a Sentencing Commission policy statement covering compassionate release motions, "a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists." U.S.S.G. § 1B1.13(c). That alone forecloses Eldabbagh's theory. *Accord United States v. Daniel*, No. 1:17-cr-00233-5, 2025 WL 1917958, at *2 (D.D.C. July 11, 2025). Repacking his failed change-in-the-Guidelines argument as a compassionate release argument will not save his claim.

*Loss Calculation.* The Court's loss calculation at sentencing likewise provides neither an extraordinary nor compelling reason for early release. At sentencing, the Court applied a loss

[2] The Government argues that Eldabbagh did not fully exhaust his administrative remedies with respect to his spousal incapacitation and drug rehabilitation arguments. *See* Opp'n. Mot. at 14–15, ECF No. 78. The Court assumes for now that Eldabbagh satisfied the exhaustion requirement and resolves his claims on the merits. *Accord United States v. Lawson*, No. 1:03-cr-00282-1, 2022 WL 2663887, at *4 (D.D.C. July 11, 2022) ("[A] court need not resolve exhaustion [for § 3582(c) motions] when, even assuming the defendant has properly exhausted his request, his motion fails on the merits." (cleaned up)).

enhancement based on Eldabbagh's "intended loss" value instead of his "actual loss" value. *See* Sentencing Tr. at 75:02–75:18. Because in his plea agreement, Eldabbagh confirmed that he "intended" to defraud the Government of up to $25 million, *see* Plea Agreement at 5 n.2, the Court applied a 20-point enhancement when Eldabbagh's "actual loss" value (about $2 million) would have permitted only a 16-point enhancement. *See* Sentencing Tr. at 74:15–75:18; Def.'s Sent'g. Mem. at 29, ECF No. 42 (arguing for the use of actual loss value to calculate the Guidelines range); U.S.S.G. § 2B1.1(b)(1)(I), (K). As Eldabbagh sees it, the Court erred by doing so and should thus grant him compassionate release. Mot. at 13–14. This claim fails twice over.

At the outset, "the availability of compassionate release" is tied to "a defendant's personal circumstances." *Fernandez v. United States*, 146 S. Ct. 1292, 1304 (2026). Given "the availability of direct appeal and collateral review under section 2255 of title 28," it does not embrace legal challenges to sentences. *See Jenkins*, 50 F.4th at 1200; *Fernandez*, 146 S. Ct. at 1304–05. But Eldabbagh pursues exactly that kind of challenge. He focuses on "alleged problems" with his "underlying" sentence (how the Court arrived at his Guidelines range), not his "advanced age, safety risk, illness, rehabilitation" or other similarly personal circumstances that may warrant relief. *Fernandez*, 146 S. Ct. at 1303, 1305. The argument thus belongs "under the umbrella of the postconviction statutes," not compassionate release. *Id.* at 1305; *Jenkins*, 50 F.4th at 1200.

In any event, Eldabbagh's argument proves unpersuasive on the substance. He relies on one court's agreement with his reading of the relevant Guidelines, *see United States v. Banks*, 55 F.4th 246 (3d Cir. 2022), while ignoring that other circuits have uniformly disagreed with him, *see, e.g.*, *United States v. Rainford*, 110 F.4th 455, 475 n.5 (2d Cir. 2024); *United States v. Boler*,

115 F.4th 316, 325–26 (4th Cir. 2024); *United States v. Tellez*, 86 F.4th 1148, 1154 (6th Cir. 2023) (observing that, aside from the Third Circuit, "every one of our sister circuits . . . states that 'loss' within the context of U.S.S.G. § 2B1.1(b)(1) includes intended loss"). Eldabbagh's lone outlier case does not undermine the Court's Guidelines determination.[3] That is especially so given the Court's explanation for why intended loss mattered to Eldabbagh's case, Sentencing Tr. at 75:17–75:18 ("I think your intended loss figure is highly relevant to your appropriate sentence."), and given the Court's emphasis on the § 3553(a) factors, not the advisory Guidelines, as the driving force behind its sentence, *id.* at 79:19–79:23 ("I come to this decision recognizing that the guidelines are purely advisory and fully believing that any lesser sentence would not be sufficient to comply with the purposes of sentencing."). The Court's loss calculation provides no grounds for relief.

*Family Circumstances.* Eldabbagh's personal struggles—here, his alleged husband's incapacitation—likewise do not justify compassionate release. Mot. at 3, 9, 11–12, 27–28. In general, a spouse's incapacitation can provide extraordinary and compelling reason to grant a compassionate release motion. *See* U.S.S.G. § 1B1.13. But to succeed through this avenue, a defendant must provide the Court with sufficient documentation of said spousal incapacitation. *See, e.g.*, *United States v. Jenkins*, No. 17-cr-00233, 2022 WL 1136060, at *2 (D.D.C. Apr. 18, 2022) (rejecting spousal medical conditions as an extraordinary and compelling reason to reduce a sentence in part because the claim had "no evidentiary support"); *United States v. Burkett*, No. 3:17-cr-00420-N(1), 2020 WL 5747872, at *2, (N.D. Tex. Sept. 25, 2020) (finding that because

[3] In November 2024 (after Eldabbagh filed his motion), the Sentencing Commission resolved this lopsided circuit split by amending § 2B1.1 to define loss as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1(b)(1)(A); U.S.S.C. Amend. 827 (eff. Nov. 1, 2024). While changes to the Guidelines do not factor into the compelling-and-extraordinary question, *see* U.S.S.G. § 1B1.13(c), subsequent Guidelines developments are not favorable to Eldabbagh.

the defendant "[did] not provide[] the Court with any documentation, medical records, or details of the severity of his health issues," he failed to carry his burden under § 3582(c)(1)(A)).

Because Eldabbagh has made no effort to prove his claim, this hurdle proves fatal. Eldabbagh paints a bleak picture of his husband struggling with autism and Human Immunodeficiency Virus and left without help. Mot. at 9, 12–13. But nothing in the record confirms that the man he mentions is his husband, much less that his alleged husband's medical condition is as dire as Eldabbagh suggests. The only evidence to which Eldabbagh refers—a letter from his supposed husband—is not attached to this motion or otherwise on file with the Court. Def.'s Ex. F at 13, ECF No. 70-1 (listing "Letter from Troy Radabaugh" as "forthcoming").

More, what the record does supply undermines Eldabbagh's account. The presentence report, for instance, lists Eldabbagh's marital status as "[s]ingle," PSR at 2, and notes that he has "never been married," *id.* ¶ 107. At sentencing, Eldabbagh confirmed that he had no objections to the presentence report's factual statements. Sentencing Tr. at 5:09–5:11. Also at sentencing, several family members made statements supporting Eldabbagh, but Eldabbagh's alleged husband was not among them. *See id.* at 51:17–51:23. Rather, passing references in the record to the man in question indicate that he was Eldabbagh's boyfriend at the time of sentencing. *See id.* at 49:02; PSR ¶ 107. Nothing in the record thus confirms his status as Eldabbagh's husband.

In any event, Eldabbagh has not provided any documents to back up his claims about his claimed husband's illnesses. The Court will not reduce a sentence based on a prisoner's mere claim that medical circumstances call for such reduction. *See Jenkins*, 2022 WL 1136060, at *2; *United States v. Sumler*, No. 95-cr-154-2, 2021 WL 6134594, at *24 (D.D.C. Dec. 28, 2021) (concluding that bloodwork showing potential signs of kidney disease and diabetes is

"insufficient documentation of a medical condition to constitute 'extraordinary and compelling' grounds for release, without formal diagnoses"). Without any confirmatory documents about his alleged husband's medical, mental, and personal issues, Eldabbagh falls woefully short of his burden.

*Rehabilitation.* Finally, Eldabbagh's rehabilitation efforts do not warrant relief. While in prison, Eldabbagh has participated in various programs and classes and has remained sober for more than two years. Mot. at 26–27. These efforts, though positive steps, do not justify release. That is because "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for a sentence reduction. U.S.S.G. § 1B1.13(d). Rather, "[t]aking classes while incarcerated" and otherwise making use of available programming "is common rather than extraordinary," *see United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023); *see also United States v. Monday*, 390 F. App'x 550, 556 (6th Cir. 2010) (recognizing that standard rehabilitation efforts do "not go beyond what would ordinarily be expected during incarceration"). Meeting expectations will not prompt Eldabbagh's early release.

* * *

Summing up, Eldabbagh has not shown that an Amendment to the Guidelines calls for a sentence reduction. He has likewise not shown that extraordinary and compelling circumstances justify compassionate release. The Court adds that even if he had, the § 3553(a) factors would counsel against a sentence reduction. *Dillon*, 560 U.S. at 827. Eldabbagh still needs a 120-month prison sentence to reflect the seriousness of his offense, deter him from future criminal behavior, and to protect the public. *See* 18 U.S.C. § 3553(a)(2)(A)–(C); *see also id.* § 3582(c)(2) (stating courts must only consider the "applicable" § 3553(a) factors).

**IV.**

After considering Eldabbagh's filings, the relevant law, and the entire record of this case, it is

**ORDERED** that Defendant's [70] Motion for Sentence Reduction, and [76] Motion for Appointment of Counsel are **DENIED**; it is further

**ORDERED** that Defendant's [73] Motion for Change of Address is **DENIED** as **MOOT**.

**SO ORDERED.**

2026.08.19
13:50:46 -04'00'

Dated: August 19, 2026

TREVOR N. McFADDEN, U.S.D.J.